Good morning, Counsel. Good morning, Your Honors. Doug Keller from Fell Defenders of San Diego on behalf of both Mr. Martinez and Mr. Carcamo. The government concedes that neither Mr. Martinez nor Mr. Carcamo were removable as charged and thus entry of their removal orders violated due process. Well, the government doesn't concede that the entry of their orders violated due process. The government concedes that Section 211 is not categorically a crime of violence. That's right, Your Honor. That's right. I do think they go farther than that and concede the client is not removable. Well, no, they conceded there was a violation of due process. You'd all shake hands and we'd leave the room and we'd enter an order. They're contesting that there was a violation of due process because they say, even though these weren't crimes of violence, they are generic theft offenses. And so tell me why, tell me what we do with that argument. Sure. I think the way the government is conceptualizing their argument is that my clients didn't suffer any prejudice from. Right. And if they didn't suffer any prejudice, there wasn't a due process. You and I are sparring here. If they didn't suffer any prejudice, there wasn't a due process violation. Colloquially, no harm, no foul. Sure. Exactly. I think my argument essentially is there is harm, there is foul. And I think the decision. Okay. So what's the harm? Let's put aside for a second because I want to hear you on this. Let's assume that Section 211 violations are categorically generic theft offenses, just for purposes of my question. What possible harm did your client suffer from the fact that the notice called them crimes of violence? The harm my client suffered is he was removed on an invalid removal order. I'm asking real harm. What would have been different had the order said, and I'm asking you to assume that these are generic theft crimes, if the notice had said didn't cite subsection F but cited a different subsection? Sure. What possible difference would there have been in the outcome? Sure. I think if your Honor's question is would my clients have been thrown out of the country on a different removal order on this alternative basis, they would have been. So then why were they prejudiced by, in effect, what was the citation of the wrong subsection? Because the problem is that they weren't removable as charged. And the cases I can cite to you for that. None of our cases, if you've got a case on point, I'd love to hear it. But none of our cases deal with this situation where the crime charged would make you removable, but the government has cited the wrong subsection. And so you don't have a case that deals with that? I do have a case. I'd like to give two answers. Which one? The first is Chowdhury v. INS. That's, I think, the closest case to your Honor's question. And that's the case I cited in my opening brief. I don't think I discussed it at length. But essentially in that case, it was a direct appeal of a removal order. This Court ultimately determined that the client was not removable as charged. Ah, yes. But here, the difference there is that we can't, in review of administrative orders, substitute reasons for the, substitute reasons that the administrative agency, for the ones the administrative agency gave. That's not what we're dealing with here. We're dealing with a district judge's determination about whether or not the treatment of your clients violated due process and prejudiced them. And so I'm, so find me a collateral attack case. Do you have a collateral attack case that deals with this issue? I think I do. Maybe it's a little different than what you're suggesting. But if I could just first perhaps try to explain to you why I think the review is the same, whether this was a direct appeal of removal order or whether it's a collateral attack in a 1326. I don't think you can convince us of that. You can try. Give me 30 seconds if I fail. Don't use more because it's not your best argument. Sure. Very briefly, the very idea of these demotions is to give the defendants what they lost, what the government took from them in the administrative process. So to win here, I need to first establish or I need to establish that the government wrongfully deprived them of judicial review to begin with. So what we're doing here is giving my clients the judicial review they were previously lost. And so that's why I think the analysis should be the same. Otherwise, the government essentially benefits from stealing judicial review from my clients in the administrative process. Although, see, my problem with that argument is that our law in this area is quite strange, 1326 D law, but it is our law. If your clients had simply gone to Mexico and protested their removal order collaterally later, we would have said we're not going to let you do it. It's only because they reentered and were arrested and charged with illegal reentry that they get the right to attack their order. And what 1326 D says is you get the right to attack it, but you've got to show prejudice and due process violations. It's just not enough that it was wrong. So I'm still back to why. So let me go to, I think, my best demotion case, which is I think this decision in Ochoa, Oregal. And I understand there's differences, but let me try to explain to you why. It's a very similar case. In that case, the client was removed twice. And with respect to the second removal order, this court determined the defendant was not removable as charged. And the government responded exactly as they do here, who cares, he was an aggravated felon by 2011, so it doesn't matter if he was removable as charged. And so just to read from this court's decision. But in Ochoa, just so that I see if I recall the facts correctly, in Ochoa, he wasn't, there wasn't a charge that dealt, in other words, it wasn't a charge that said this crime makes you removable and cited the wrong subsection. The government said by now, he's removable for other reasons. And the court said, that's fine, go back and do it right. But here the question is, is what the government did in the removal proceedings 2010 for Mr. Martinez close enough for government work? Sure. I think sort of two points. First, in Ochoa, Oregal, I think what's important about that case is that court made, this court made very clear that the analysis is not just whether the person would have ultimately been thrown out of the country. That's the fundamental argument the government's making today, that it doesn't matter because Mr. Martinez, Mr. Carcamo would have been thrown out of the country regardless. This court in Ochoa directly rejected that argument. No, I understand. I understand that. Let me just, let me ask you a question that nobody treats. Ochoa says you've got to do a bunch of things if you want to prevail in 2016. The last thing is you've got to demonstrate to the district court that there are, that there's a reasonable possibility that you would have been allowed, because your clients are clearly removable, that they would have been allowed to stay. Right. Did you make any proffer below on that issue? No, because in our view, we don't need to. Well, but Ochoa says you do. I don't think Ochoa does, because in Ochoa, if they had said that, then those defendants, I'm sorry, that defendant also couldn't have established that. Wasn't there a remand? And maybe I'm thinking of the Parra case. Haven't we remanded repeatedly to the district court to say, okay, you screwed up the rest of the analysis, now your job is to figure out whether there's a plausible possibility that somebody would have remained? This court didn't do that because it didn't need to, because in this court's view, being removable as charged was the prejudice, that it didn't matter to the client in that case. But they're removable. You don't contest the removability of your clients. Well, I do. They never did. That's a second-term argument. They never did. In other words, they didn't say in the initial hearing, wait a minute, we're not Mexican. Wait a minute, we didn't cross without inspection. Correct. Those defenses have all been waived long ago. The question is whether or not they're categorically ineligible for discretionary relief. And so don't you have some burden of showing at least there's a plausible case that they're eligible for discretionary relief? I don't. And that's exactly what Ochoa says. In Ochoa, the clients were unquestionably aggravated felons by 2011. Ochoa says you need not make a showing of, tell me where in Ochoa it says that. So in Ochoa, if I could just read you the relevant portion. Sure. Unfortunately, I don't have the pin set right in front of me, but in that case, the government argued, as they argue here, that the defendant was, quote, not prejudiced because he was an aggravated felon who would have been removed anyways and would have been denied discretionary relief. Put aside his aggravated felon status. Forget about it for a moment. Does Ochoa say that even when you get past that, you're entitled to vacate the order of removal even if you had no basis for being able to stay in the country? Sure. If I could then finish the rest of this relevant portion of the paragraph. Yeah, yeah. This Court said that it disagreed for a fundamental reason. He was not removable as charged. In the last, I think, most important sentence. Because that case didn't involve an allegation of aggravated felony. It was for lack of entry documents, right? That's right. But that's different than this case. Go ahead. I don't think it is. I think the important thing is that Ochoa made it clear that the focus is not on removability. If the focus was on removability. Isn't the accurate answer to my question that Ochoa doesn't deal with this issue? No, I disagree. So you think, if you think Ochoa, you think your case turns on Ochoa holding that whether or not there are equities that the person could remain in the country is completely irrelevant? I don't think that's what Ochoa says. Well, doesn't Judge Reinhart say in PARA, at the very end of it, he says, I found all these, the same deficiencies you think exist. But a question remains. And that's whether or not he could show any equities to stay in the country. And we're remanding to the district court for the court to consider that. I don't remember the exact case, but I suspect the difference between my case and that case is that defendant was removable as charge. Oh, no. The court found that he was not removable as charge. I'm sorry. Is this the Washington robbery case? The court, Judge Reinhart goes through the analysis and says he's not, he wasn't removable as charge, but he's still got to show, after all. That doesn't mean you get to stay in the country for free. You still got to show that you might have gotten discretionary relief had the other process worked. Because that's really your argument. Just let me finish. And I have a question after that. Your argument in this case is that, isn't that my clients weren't removable. They never argued they weren't removable. Your argument in this case has to be, had they not been removed in this process by a faulty order, they would have somehow had a chance of getting discretionary relief. That's the only way they get to stay in the country. Let me finish. I know you want to stay. So my question is, don't you have to at least make some showing that they were entitled to discretionary relief? No. I think if I need to show discretionary relief, I lose this case. I don't think I do because of cases like Ochoa and Martinez and others. Valdivia Flores, another case this court decided a couple months ago, where the defendant in that case was undocumented. And once this court determined he was not removable as charged, they found he suffered prejudice. An entry of the removable order is fundamentally unfair. All right. Counsel, let me ask you this. Are you familiar with our decision in Alvarado-Pineda? I believe so, Your Honor. Okay. 774-F30-1198. I'll give you a chance to look at it when you sit down and maybe you can address my rebuttal. Because that case seems to say that in that case, the defendant was convicted of second-degree robbery, and then after that was determined not to be appropriate, the government argued that it was a theft offense, just like in this case. And it appeared that we agreed that that was the appropriate approach to that. If Alvarado-Pineda does rule that way, do you lose? I discussed that case at length in my brief. I think that the issue in that case, as I noted in my brief, is that the decline in that case, there was actually two removal orders. The removal Your Honor just discussed was the first one. At trial, the government doesn't ever rely on that removal order. Instead, there's a second removal order. And that second removal order, the client was undocumented. And so there was no question he was removable as charged. And so the defendant had to establish, as I think Judge Horwitz is saying, equities that would allow him to stay. But listen to this language and tell me what you think. We said, the district court concluded that second-degree robbery is a crime of violence, and on that basis held that Alvarado-Pineda, who was sentenced to a 14-month prison term, had been convicted of an aggravated felony. We affirm on a different ground. We hold that a conviction under the statute is a conviction of a theft offense. Isn't that exactly what we're looking at here? No, because what the Court is saying in that case, and again, I discussed it in my brief, and I'd point Your Honor to that, is that the client, the issue in appeal was that second removal order. He was unquestionably removable on that removal order because he was undocumented. And so what this Court was saying is that he's an aggravated felon. He can't get relief from removability. He's removable as charged, which I think makes my case different. But in any event, not only is he removable as charged, he's an aggravated felon, so he can't get any sort of relief. I think that's all this Court is saying. I don't see a distinction. Explain to me what your case is about. I mean, look, your clients are removable. They entered without inspection. Sure. Nobody contests that. The question is whether they're eligible for discretionary relief because that's the only prejudice you could have suffered by the summary hearing where you couldn't seek discretionary relief because the immigration officer had found them ineligible for it. So why isn't it exactly the same case? The only thing I can say, Your Honor, is I think if Your Honor were correct, Ochoa or Regala were wrongly decided. This Court's decision on Martinez was wrongly decided, and this Court's decision on Paul B. No, because those are distinguishable. Those cases are distinguishable. I respectfully disagree, Your Honor. If we disagree with you, do you lose? No, but I think it's an open question. But I don't think those cases are meaningful distinguishable. All right, thank you. I see I've gone well over my time. I'm happy to discuss a second issue, but I'm also happy to sit down if you're tired of hearing from me. Well, it's not that we're tired of hearing you, but you've well exceeded your time, and I agree we helped you. But we'll give you a minute for rebuttal. Thank you, Counsel. We understand your position. May it please the Court, Daniel Zip on behalf of the United States. Your Honor, to successfully dismiss an indictment under 1326D, the defendant has to show prejudice. He has to show that he can't be prosecuted for illegally reentering the country after removal because it's at least plausible that he would not have been removed in the first place or should not have been removed in the first place. Well, but nobody ever got to that last part, right? The district court didn't say you lose because you haven't shown plausibility. The district court said you lose because I happen to agree with the notice of removal. Section 211 was a crime of violence. Not exactly, Your Honor. What the district court said is you haven't shown plausibility because you're an aggravated felon. Right. Okay. Yeah. It's the same. In other words, the district court relied solely on the aggravated felony part. It never got to the equities issue. That's correct. Okay. District court was wrong in reading Section 211 as being a crime of violence. You concede that. We concede it's not a crime of violence. Okay. Good. Okay. We're together. Okay. Now the question is, you say, well, it really doesn't matter because if it's not a crime of violence, it's a generic theft offense. Yeah. And the notice of removal, however, is a notice of removal that cites subsection F, which says it's a crime, which means it's a crime of violence. Why can we uphold the notice of removal on grounds differently than the ones that it alleges? Your Honor, I think for several reasons. First, the grounds that are alleged in this case are different from those in the immigration context and the child case. Yeah. And we can distinguish all the cases. That's not what I'm asking. I'm asking, you concede that this notice says you're removable because you committed a crime of violence. Yes. How is this case different from Alvarado-Pineda where it also had F as the notice of removal? How does this case differ? In Alvarado-Pineda, that was a, the Washington robbery case. It's not. I don't think it's different. Yes. It's the Washington robbery case and the notice says what? The notice that issues that's being attacked says what? That case is on all fours with this one. Okay. I'm sorry. That's what. Yeah. The notice said F. The notice said F. This court said let's look at G. That's F. Okay. So now the question is, I'm trying to walk through this. Is Section 211 a generic theft offense or more, I suppose, more generally, why should we address that issue in the first instance since the district court never did? Why shouldn't we send it back to the district court and say, okay, you were wrong. The basis on which you decided this was wrong. The government says this is a generic theft offense. If they're right, then these two gentlemen lose. You decide that issue. Your Honor, I do believe in at least one of the two cases, the court did reach the theft offense. Not in Martinez but in the other one? I believe so. Okay. But ultimately, it's a purely legal question, and it's one that this court has already decided as recently as a few months ago in an unpublished decision. Yeah, I know. That's the problem. But it's also one that the BIA has addressed in a published opinion in Delgado when the BIA addressed the exact same argument that the defense raised here. The exportation issue? Yes. So the BIA has directly addressed and rejected that argument. This court has addressed and rejected the argument in an unpublished decision. And in Alvarado-Pineda, more generally, this court compared identical language in the Washington State statute to the generic definition of theft and concluded that the entirety of that robbery statute falls within the generic definition. Can you remind me in which of the two cases the district court addressed the generic theft issue? I don't have it in front of me. I must have looked at the wrong one when I was looking to see if the district court had addressed it. But I'll find it. Okay. So in addition to the sort of binding precedent from this court in Alvarado-Pineda, it's an unpublished decision and the decision of the BIA. You don't get far with the unpublished decision, so you might want to steer away from that argument. I mean, you can tell us why its reasoning is brilliant, but you just can't cite it. The reasoning is absolutely right in that case for a couple different reasons. First, the idea that the asportation aspect of robbery takes it outside of the generic theft defense is not consistent with this court's case law, that receipt of stolen property is itself a theft defense. The court in Corona-Sanchez defined the idea of a theft defense broadly. Beyond the generic common law idea of theft or larceny, the definition here is a theft offense, including receipt of stolen property. So the idea that someone who could take property in a robbery is committing a theft offense, that someone who receives that property down the road is committing a theft offense and continues to commit a theft offense as they hold onto that property. But that sort of in-between of carrying it from the place of theft to the place of receipt somehow falls outside of the broad theft definition is not consistent. As I read the California law, and I start by admitting that I don't understand California law, you have to have the same intent during the asportation phase as you did during the theft phase, which is to deprive someone of the use of the property. Yes. So even if the crime, even if the California crime includes asportation, what difference would it make? It wouldn't make any difference in your honor. That's what the BIA held in Delgado. They said that specifically under California law, you have to have the specific intent to facilitate the commission of the entire offense. So it can't be that someone has a robber jump into his car and he drives him from point A to point B and he's guilty of robbery. The robber would have to jump into his car, tell him I just robbed somebody. Will you help me get to a temporary place of safety? And the driver says, yes. Then he's aiding and abetting a robbery. And that clearly is a theft offense. Can you address the point that I unfortunately kept your colleague up for too long on? Our prior cases seem to say that even if you can show everything else, at the end of the day, you've got to show that there's a reasonable chance, a plausible chance that you would have gotten discretionary relief. Yes. We're here dealing not with an evidentiary hearing because the judge just finds Section 211 is a violent crime. How should these cases proceed on that basis? In other words, does somebody have to allege in his complaint something that says, allege in his collateral attack, 1326 collateral attack, that he might have been able to stay because he would have been eligible for asylum or some other form of discretionary relief? I just don't know how this proceeds procedurally in your view. I think in a typical case that if there wasn't an aggravated felony, yes, that would be the fourth prong of 1326D. The defendants would have to show, tick through all their equities versus their criminal history. And that's a hearing. And my question is a pleading matter. Do they have to plausibly plead that they would have been eligible for in their 1326D petition? Do they have to plausibly plead that? Or is that just something we wait and get to once we finish the other stuff? I'm not sure if they would be precluded from arguing it at a hearing. I mean, generally this would proceed, they would tick through the four requirements in their motion papers, and then the court would decide the issue. But I don't think that not addressing it in the papers. Yeah, it's not addressed in this case. But I'm also not sure that their papers give us a plausible reason for even had they been eligible, they would have had a chance of getting discretionary relief. There's no allegation of persecution or torture or anything like that. I agree, Your Honor. And I think ultimately the court doesn't have to even reach that issue because the district court was correct in holding that this was an aggravated felony. And any error in writing subsection F versus subsection G would not have affected their removability. And on that last point, I would stress that that error in writing F instead of G was not actually an error at the time that the defendant was convicted. Yeah, but our cases say it's retroactively an error. Right. But to say that someone who, under binding Ninth Circuit law, filed an administrative removal order for someone who's then excused from seeking administrative review of that decision, excused from judicial review based on the nature of the form, and then essentially excused from any prejudice showing, as long as the error appears in the charging document itself, that's taking 1326D well farther than Congress intended in the wake of Mendoza-Lopez. Counsel, just for the record, the district court did in the, what's the second one, in the Kakamo case did at ER 70 make the finding that it was a theft offense. And one of the problems I had in this case was my assumption, because everybody said so, that both cases were exactly the same. Judge Rawlinson's right, and you were right in pointing that out. All right. Thank you, Counsel. Thank you. Roboto, let's start with one minute. Thank you, Your Honor. I certainly wouldn't oppose a remand in the Martinez case if this Court is telling me that even if they're not. Well, except we have to decide the other case. It's in front of us. Right. Wouldn't that cover the Martinez case? I mean, perhaps. I guess it depends on how you resolve it. Well, perhaps. Surely. It's the same offense. Well, I have more minutes. If it's an unpublished decision, this Court could remand on one and not the other. But, you know, that's for you to decide. If I could then just briefly address the theft issue. I think sort of the real crux of it is that generic theft just requires or requires a taking or an exercise of control over the property. As LaFave says, it requires the defendant to have secured dominion over the property. This person who is sort of the getaway driver who learns about the robbery for the first time after the property has already been secured, he himself has not secured the property. He wasn't involved with the securing of the property. Nor is he aiding and abetting an ongoing theft. Because a theft, not the robbery, the theft was over the moment the initial robber took the property. So the getaway driver, or however you want to call him, or wherever you want to call him, simply wasn't involved in the initial taking of the property. And so that's the crux of the problem for the government, that California robbery allows someone to be guilty of robbery even if they had nothing to do with the initial acquisition of the property. I think the BIA, the problem with the BIA decision is it just misreads California law. Under the BIA decision, this getaway driver must have, according to the BIA, had the intent to help the initial acquisition of the property. But that doesn't make any sense, because by the time this getaway driver was involved, the taking already occurred. So he's just, at best, aiding and abetting the completed crime of theft, which is really being an accessory after the theft. Roberts. And that's how you would distinguish the Washington case? Yes. So I pointed to the Robinson case in Washington that notes that Washington robbery is very different. This getaway driver that I'm describing would be guilty of an accessory after the theft to a robbery in Washington. That's sort of what makes, as the California dissent noted in Cooper, that's what makes California law novel in this respect. All right. Thank you, counsel. Thank you, Your Honor. Thank you to both counsel. The case just argued is submitted for decision by the court. The next two cases, Lew v. Sessions and Daywood v. Sessions, have been submitted on the briefs.
judges: Rawlinson, Hurwitz, Melloy